Frederick R. Bradel, Petitioner *v.* Commonwealth of Pennsylvania, Department of Labor & Industry, Respondent.

Argued September 14, 1983, before Judges WILLIAMS, JR., DOYLE and BARBIERI, sitting as a panel of three.

*Larry L. Miller,* with him *Fred Speaker, Pepper, Hamilton & Scheetz,* for petitioner.

*Richard C. Lengler,* Assistant Counsel, with him *Jonathan B. Sprague,* Assistant Chief Counsel, and *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE BARBIERI, January 10, 1984:

This is an appeal from a decision and order of the State Civil Service Commission (Commission) sustaining the furlough of Frederick R. Bradel (Petitioner) from his position as an Employment Security Specialist III (ESS III), regular status, for the Department of Labor and Industry (Department). We affirm.

While he was employed by the Department, Petitioner was assigned to the Trade Readjustment Program (TRA) of the Bureau of Job Service, a division of the Department's Office of Employment Security (Office). In a letter dated March 19, 1982, the Department informed Petitioner that he was being furloughed from his position pursuant to the provisions of Section 802 of the Civil Service Act (Act), Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §741.802, because of a cut in the Office's funding, and Petitioner subsequently appealed this personnel action to the Commission pursuant to the provisions of Section 951(a) of the Act, 71 P.S. §741.951(a). At a hearing before the Commission, the Office's acting Executive Director, Wendell K. Pass, testified that as a result of cuts in the Office's funding, it was determined in February of 1982 that 211 positions in the Office's Work Incentive Program (WIN), and forty other Office positions, could not be funded in 1982. None of the positions that could not be funded, however, were located in the TRA program. Susan Benner, the Department's Chief of Recruitment and Placement, testified, in turn, that of the 251 positions that could not be funded, two were in Petitioner's class,

that being the ESS III class, and that she had the responsibility of determining which employees were to be furloughed because of this lack of funding for these two positions. In this regard, Ms. Benner testified (1) that she determined that there were thirteen individuals employed in ESS III positions within the Office's Bureau of Job Service, which she referred to as Petitioner's "furlough unit," (2) that she divided these thirteen individuals into quarters on the basis of their last regular service ratings, and (3) that she selected the two employees to be furloughed from the lowest of these quarters, which included Petitioner, on the basis of seniority pursuant to the mandate of Section 802. Since no ESS III positions were eliminated from the Office's TRA program, presumably an individual from somewhere else within the Bureau of Job Service was transferred into Petitioner's position.

Petitioner, for his part, did not challenge the validity of Ms. Benner's selection process, and in fact expressly agreed that he would have to be furloughed if the two ESS III positions in question were not funded. Instead, Petitioner alleged (1) that the Office's TRA program received an additional $225,000 in federal funding between the time when the initial decision was made to furlough 251 employees and the date they were actually furloughed, and (2) that the Office should have reduced the number of people it furloughed in light of this increase in funding. Specifically, Petitioner, who represented himself at the hearing, summarized his argument as follows: "So my position is that here is money that they could have saved forty people. [sic] I could have been one of them. I'm not saying I would have been, I'm just saying that I could have been." In response to Petitioner's argument, however, the Department recalled

Mr. Pass who conceded that the additional $225,000 was received for the TRA program. Mr. Pass further testified, however, that these funds were legally restricted for use in the TRA program, and hence could not have been used to restore the positions which had not been funded because of budget reductions in other programs. Moreover, it was clear from both Mr. Pass' and Petitioner's testimony that none of additional $225,000 the Office's TRA program received was used to fund additional ESS III positions *within* the TRA program.

After evaluating this evidence, the Commission issued an adjudication in which it incorrectly found as a fact that Petitioner had been employed in the WIN as opposed to the TRA program. The Commission also stated the following, however:

> Appellant, however, contends that the scope of the furlough decision was excessive. His contention is based on the fact that funds totaling 225,000 dollars were made available for the TRA unit . . . and, therefore, an adjustment should have been made to lessen the extent of the furloughs. This contention was refuted by testimony from the appointing authority's witness to the effect that TRA money could not be used for the WIN program and, therefore, could not affect appellant's designation for furlough. . . . The Commission finds this evidence credible. . . .

The Commission accordingly affirmed the furlough action, and the present appeal followed.

The appointing authority has the burden of proving that a furlough was necessitated by a lack of funds or work, Section 802, and where as here the party with the burden of proof prevailed below, our scope of review is limited to a determination as to

whether the constitutional rights of the petitioner have been violated, an error of law committed, or whether the findings of the Commission are supported by substantial evidence. *Philadelphia County Board of Assistance v. Cahan,* 24 Pa. Commonwealth Ct. 543, 358 A.2d 440 (1976).

Here, Petitioner alleges that the Commission incorrectly found that he was employed in the WIN program instead of the TRA program, and that it should have concluded that he was improperly furloughed since the TRA program received additional funding.

While it is true that the Commission incorrectly found that Petitioner was employed in the WIN program, this mistake is of no relevance to the Commission's ultimate conclusion. As the Commission correctly realized, when a position is eliminated because of a lack of funding or work, the individual currently holding that position isn't necessarily the individual who will be furloughed. Instead, Section 802 provides that decisions on the furloughing of employees are to be made on a class wide basis, taking into consideration the relative job performance and seniority of the members of that class. Hence, under the provisions of Section 802, an employee can be "bumped" from his position when furloughs are made, even if the program he was employed in was not the program that was cut. This is what occurred in the present case since Petitioner was "bumped" from his position in the TRA program, which was not cut, by an employee who held a position in the same class, but in a program that was cut. Since, in the present case, the additional funding the TRA program received could not be used to restore funding for positions which were not financed in other programs, and since the funding was not used to create additional ESS III

positions within the program, we believe the Commission correctly concluded that the receipt of this funding did not effect the validity of the decision to furlough Petitioner. We shall therefore affirm.

ORDER

Now, January 10, 1984, the order of the State Civil Service Commission at Appeal No. 3935, dated October 27, 1982, is affirmed.